USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/2/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACQUELINE VESNIC,

                     Defendant-Appellant,

    -against-

MARIANNE T. O'TOOLE, AS CHAPTER 7 TRUSTEE
OF THE ESTATE OF BRADLEY C. REIFLER,

                 Plaintiff-Appellee.

No. 20 Civ. 1423 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

     This appeal arises from an adversary proceeding in connection with the bankruptcy case of Bradley C. Reifler ("Debtor").[1] *In re Bradley C. Reifler*, No. 17-35075 (Bankr. S.D.N.Y. Jan. 20, 2017). On January 20, 2017 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *In re Reifler,* No. 17-35075, at ECF No. 1. Marianne T. O' Toole ("Appellee") was appointed Trustee of Debtor's estate, and she initiated the instant adversary proceeding on January 18, 2019 by filing a Complaint against Jacqueline Vesnic ("Appellant"). (A-8–18.) In the seven-count Complaint, the Appellee alleged the Debtor had fraudulently transferred $129,500 to Appellant in the two years preceding the Petition Date. (A-11 at ¶ 16.) Appellee sought to avoid and recover the transfers. (A-16.)

---

[1] Rule 8018 of the Federal Rules of Bankruptcy Procedure requires an appellant to serve and file with their principal brief excerpts of the record as an appendix. Appellant acknowledges this requirement in her reply brief, but Appellant states she had "no ability to produce" one due to the pandemic. ECF No. 12 at 1 n.1. The Court empathizes with the burden the pandemic has placed on the parties, but the Court notes that Appellant had several months prior to the pandemic to create an appendix. The Court also observes that Appellee complied with the requirement while operating under the same conditions. Although this Court is displeased with Appellant's failure to comply, it will allow the appeal to proceed on the original record. As such, the record will consist of the parties' designations of the bankruptcy record on appeal and citations to the underlying bankruptcy docket. For ease of reference, the Court will cite to Appellee's Appendix ("A-"), filed at ECF No. 11-1 & 11-2. Appellee's Appendix is filed on the docket in multiple volumes consecutively paginated. Accordingly, citations to the Appendix are to the consecutive page number, not the page numbers automatically assigned for each volume by the Court's ECF system.

On October 31, 2019, the Bankruptcy Court issued an order ("October 31 Discovery Order") requiring Appellant to complete a number of overdue discovery obligations, including responding to written discovery and appearing at a deposition.  (A-188–191.)  Appellant failed to timely comply.  (A-248.)  Appellant also failed to comply with the Bankruptcy Court's November 14, 2022 order ("November 14 Expense Award Order") requiring Appellant to pay Appellee's attorneys' fees incurred in connection with enforcing Appellant's discovery obligations.  (A-200–01, 248.)  Appellee thereafter filed a motion for sanctions, (A-202–234) upon which the Court held a sanctions hearing on December 17, 2019 and later issued an order on December 26, 2019 ("December 26 Sanctions Order").  (A-247–290.)  In its Sanctions Order, the Bankruptcy Court found the Appellant in contempt, struck the Appellant's answer, and entered default judgment in accordance with Rule 37(b)(2)(iii)–(iv) and Rule 37(e)(2)(c) of the Federal Rules of Civil Procedure ("FRCP").  (A-247–48.)  Appellant commenced the instant appeal on January 8, 2020.  Notice of Appeal, ECF No. 1.

## BACKGROUND

Appellee commenced the instant adversary proceeding on January 18, 2019.  (A-8–18.)  Appellant appeared by counsel and timely filed an answer on February 12, 2019.  (A-19–24.)  The Bankruptcy Court issued its first scheduling order on March 15, 2019 (A-25–29), which required the parties to complete "all forms of discovery" by June 15, 2019.  (A-26.)  The order reminded the parties to provide initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  (A-26.)  "Failure to comply" with the order, warned the Bankruptcy Court, could "result in sanctions being imposed."  (A-29.)  On June 6, 2019, the Bankruptcy Court extended the discovery deadline to September 15, 2019.  (A-31.)  Reminding the parties of their obligation to serve initial disclosures (A-31), the Bankruptcy Court again warned that "[f]ailure to comply" with

the Bankruptcy Court's order could "result in sanctions being imposed." (A-34.)

Appellant was required to serve her initial Rule 26 disclosures by March 26, 2019—14 days after attending the Rule 26(f) conference, *see* FRCP Rule 26(a)(1)(C)—but she did not do so until September 6, 2019. (A-142–43.) Appellant only served her disclosures after receiving two letters from Appellee's counsel and a stern warning from the Bankruptcy Court at a conference held July 30, 2019. (A-35–52, 119, 123.) Even then, Appellant waited another 39 days to serve a 33-word disclosure:

> (1) The only people with information are the Defendant, her father and Brad Reifler. We do not have contact information for Defendant's father.
> (2) Documents have been produced.
> (3) There are no expert reports or testimony.

(A-142–43.)

Appellant was likewise required to serve responses to Appellee's document requests and interrogatories by June 28, 2019, *see* FRCP Rules 33 and 34. (A-98–103, 105–112.) Although Appellant's counsel acknowledged receipt of Appellee's written requests on June 4, 2019 (A-117), Appellant failed to timely serve responses. Instead, Appellant claimed she had "no documents." Appellee's counsel twice requested Appellant serve her overdue responses, once on July 8, 2019 and again on July 19, 2019. (A-119, 123.) Appellant finally served her responses on July 25, 2019 (A-125–28), shortly before an upcoming conference with the Bankruptcy Court. The responses were scant; Appellant again averred she had "no documents," in addition to suggesting "no communications" existed in connection with the alleged fraudulent transfers.

At the July 30 conference, however, Appellant's counsel acknowledged Appellant was in possession of relevant documents. She had, for example, access to three years of statements for bank "accounts where [the alleged fraudulent transfers] went into." (A-39.) Appellant's counsel argued that the statements for those accounts were "online" and that the Federal Rules of Civil

Procedure did not obligate Appellant to "create" a screenshot of the statement.  (A-40–41.)
Appellant's argument was not well-taken.  The Bankruptcy Court remarked that her counsel's
argument belonged in the "20th century" and emphasized that the "federal rules absolutely
require[d]" production of the relevant bank statements. (A-41–42.) The Bankruptcy Court further
warned the Appellant that she was "walking on perjury."  (A-42.)  The Bankruptcy Court then
granted Appellee permission to file a motion to compel discovery, advising Appellee that the
motion ought warn Appellant that a "lack of cooperation and lack of documents" could lead to a
"judgment against [Appellant], without going to trial." (A-45.)  In so doing, the Bankruptcy Court
"let [Appellant] know" of the impending consequences for further discovery deficiencies,
including the "strong possibility" the Bankruptcy Court enters a default judgment.  (A-45.)

Appellant's counsel emailed Appellee's counsel the night of July 30 to note "there are no
retained emails," suggesting instead that the Appellant communicated with Debtor through an app
"where the [messages] are not retained."  (A-130.)  Appellant later identified the app as
"WhatsApp."  (A-138.)  Appellant's counsel also allegedly emailed an incomplete set of bank
statements, to which Appellee objected the next day.  (A-130, 132–33.)  On August 2, 2019,
Appellant produced a more complete set, albeit without bates numbers and without any
accompanying emails or texts.  (A-135–36.)  Appellant's counsel also indicated Appellant was
traveling to Switzerland from August 15 to September 15 and would not be available for her
deposition.  Appellee had previously noticed depositions for June 4 and August 2, (A-114–15,
123) but neither deposition occurred because of (1) Appellant's month-long visit to Serbia and (2)
Appellant's failure to respond to discovery requests, respectively.  (A-121, 132–33.)  In amended
responses to Appellee's document requests, dated September 6, 2019, Appellant again indicated
she communicated with Debtor via WhatsApp, but she did "not retain these messages, or any

4

messages, even in electronic form, as a matter of course, and the site does not retain them to my knowledge either." (A-138.)  Appellant did not amend her responses to Appellee's interrogatories. As a result, Appellee filed a motion on September 12, 2019 to compel Appellant to "properly respond to the Trustee's first requests for production of documents [and] first set of interrogatories, and appear for depositions." (A-53–147.)  The motion included a request for sanctions, including the entry of default judgment should Appellant fail to abide by the Bankruptcy Court's ruling. (A-54.)

The Bankruptcy Court held argument for Appellee's motion on October 29, 2019. (A-161–187.)  The Bankruptcy Court said Appellant was "stonewalling" the Court by not producing her WhatsApp messages or otherwise describing her retention process. (A-178.)  Appellant's counsel argued the messages were not retained. (A-177–182.)  Appellant's counsel further argued Appellee could depose Appellant regarding her messages and retention settings. (A-177–182.) The Bankruptcy Court was unmoved.  The Bankruptcy Court made clear it was "fed up" and insisted the messages either "be produced" or Appellant answer questions such as, "What are her settings? What causes [the messages] to be deleted? Who has put that in place? What is her password?" (A-179–180.)  Appellant's counsel insisted the latter questions were proper deposition questions. (A-180.)  The Bankruptcy Court disagreed: "[I]t's an answer to an interrogatory." (A-180.)  In addition, the Bankruptcy Court ordered Appellant to produce emails from or information related to Appellant's university email address (A-182–83), and (2) amend her initial disclosures to provide an address and contact information for her father (who Appellant listed as possessing discoverable information), or otherwise explain why she does not have contact information. (A-184–85.)  The Bankruptcy Court thus granted Appellee's motion and subsequently issued the October 31 Discovery Order.

The Bankruptcy Court ordered Appellant to do the following: (1) within 14 days, serve Appellee's counsel with all responsive documents in Appellant's possession; (2) pay reasonable attorneys' fees of Appellee's counsel in connection with Appellee's attempts to obtain Appellant's discovery compliance; (3) appear for her deposition within 21 days of when she produces all responsive documents, but not later than 45 days following entry of the order; and (4) serve "proper, complete, and signed written responses" to Appellee's request for document production and interrogatories, including (a) "a detailed and complete description of any documents that existed, but were destroyed, deleted, and/or no longer exist" and (b) "the complete names and current telephone numbers, emails or addresses for [Appellant's] father and mother." (A-188–191.) The Court twice warned Appellant that in the event she "fail[s] to comply with [the] Order or fulfill the requirements within the specified time, her Answer shall be stricken and/or a default judgment shall be entered against [her]." (A-189, 191.) Appellee submitted a schedule of itemized attorneys' fees and expenses in the amount of $2,300.50, to which the Appellant did not object. (A-195.) The Court in response issued its November 14 Expense Award Order requiring Appellant to pay Appellee $2,300.50 within 14 days. (A-197–198.)

Appellant failed to pay Appellee's attorneys' fees, amend her discovery responses, produce additional documents, appear for or even schedule a deposition, or otherwise abide by the terms of the October 31 Discovery Order or November 14 Expense Award Order. Appellee moved for default judgment on December 4, 2019 (A-202–234), and the Court granted Appellee's motion after hearing argument on December 17, 2019. (A-247–48.) In an opposition to the motion and at the hearing, Appellant's counsel admitted he could not get in contact with Appellant, who had left the country on a months-long backpacking trip through Mexico. (A-235, 288.) Incorporating "all the prior proceedings in this adversary proceeding" (A-247), the Court issued its December

26 Sanctions Order striking Appellant's answer and entering default judgment against Appellant in the amount of $129,500.  (A-247–48.)

## STANDARD OF REVIEW

This Court will not set aside a bankruptcy court's award of sanctions unless the award constitutes an "abuse" of the court's discretion.  *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010). An award constitutes an "abuse of discretion" where the court's decision rests on the "application of the wrong legal principle" or a "clearly erroneous factual finding," or where the decision "cannot be located within the range of permissible decisions."  *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

## DISCUSSION

FRCP Rule 37(b)(2)(C) provides, in relevant part, that when a party fails to comply with a discovery order or permit discovery, the court may "render[ ] a judgment by default against the disobedient party."  Several factors are "useful" in evaluating a court's "exercise of discretion" to enter default judgment under Rule 37.  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).  These factors include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance."  *Id.* (citations omitted).  Although the Rule also provides for sanctions that are less harsh, the mere availability of softer sanctions does not bar a court from imposing the default sanction when warranted. *See Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989).

At the outset, Appellant provides no reasons justifying her disobedience of the Bankruptcy Court's orders.  Prior to appearing before the Bankruptcy Court on July 30, Appellant had already flouted the Bankruptcy Court's scheduling orders and her obligation under the FRCP to timely

produce responses to written discovery.  When she finally served her initial responses on July 25

(a month overdue), she alleged she had "no documents" or "communications" to produce.  (A-

125–28.)  She later admitted, however, that she had three years of bank statements showing

transfers from Debtor to her, and she also acknowledged communications between her and Debtor

via WhatsApp.  (A-39, 130, 138.)  In the face of the Court's verbal and written warnings, Appellant

failed to produce any of these communications or otherwise explain the reasons for her failure to

do so.  But Appellant's failure to appear for her deposition is the pièce de resistance.  Despite the

October 31 Discovery Order in which the Court required Appellant to appear for a deposition

within 45 days—by December 15, 2019—Appellant was unavailable for the months of November

and December.  She was away on a backpacking trip through Mexico, and her counsel could not

reach her.  (A-235, 288.)  That fact was all the Bankruptcy Court needed to hear after months of

"stonewalling."  (A-178, 288.)  Appellant was well aware of the October 31 Discovery Order and

November 14 Expense Award Order, and yet she did not comply or seek relief from the orders.

*Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 255 n.2 (S.D.N.Y. 2011), *aff'd,* 512 F. App'x 45 (2d Cir.

2013) (entering default judgment where party failed to comply with two court orders and did not

otherwise seek relief from them); *Davis v. Artuz*, No. 96-CIV-7699 (GBD), 2001 WL 50887, at *3

(S.D.N.Y. Jan. 19, 2001) ("Noncompliance with discovery orders is considered willful when the

court's orders have been clear, when the party has understood them, and when the party's non-

compliance is not due to factors beyond the party's control.").

The Bankruptcy Court also considered—and imposed—lesser sanctions, yet Appellant did

not comply with those either.  In its October 31 Discovery Order, the Bankruptcy Court directed

Appellant to pay Appellee's attorneys' fees incurred in securing Appellant's compliance with

discovery.  (A-190.)  Appellant did not object on the record or in writing to the Order.  Nor did

Appellant object to Appellee's schedule of fees and expenses, totaling $2,300.50, or the Court's November 14 Expense Award Order, which accepted Appellee's schedule.  At no point prior to this appeal did Appellant raise her apparent inability to pay $2,300.50.  The Bankruptcy Court was not unjustified in entering a harsher sanction after Appellant ignored a prior court order imposing lesser sanctions.  *See, e.g., Coach, Inc. v. O'Brien*, No. 10-CIV-6071 (JPO), 2012 WL 1255276, at *9 (S.D.N.Y. Apr. 13, 2012) (finding imposition of less severe sanctions would be "an exercise in futility").

Appellant had ample time and notice to comply with her discovery obligations and the Bankruptcy Court's orders.  Rule 37, for one, outlines the consequences of failing to timely comply with discovery obligations.  The Court's original and amended scheduling orders likewise warned that failure to timely comply with all discovery obligations could result in sanctions.  Despite these initial warnings, Appellant ignored the deadline for serving initial disclosures or responding to written discovery.  At no time did Appellant ask opposing counsel or the Court for additional time. Only after an extra month and repeated requests from opposing counsel did Appellant serve responses to Appellee's requests for document production and interrogatories.  These responses were threadbare, and the Bankruptcy Court acknowledged as much at the July 30 hearing when it said Appellant was "walking on perjury" (A-42), "call[ed] into question" "[e]very single answer" (A-43), and raised the "strong possibility" default judgment would be entered against Appellant for future non-compliance with discovery obligations.  (A-45.)  Only then, over one month after her discovery responses were due, did Appellant raise (for the first time) that she communicated with Debtor regarding the alleged fraudulent transfers.  Yet Appellant produced none of these communications and failed to amend her written discovery responses to reflect why Appellant could not produce the communications.  Appellant's initial disclosures, served six months late on

September 6, were no more helpful.  In a 33-word disclosure, Appellant stated nothing of substance other than list her father as a person possessing discoverable information.  Appellant, however, provided no contact information—past or present—for her father.  Appellee then moved to compel amended discovery responses, production of documents, and Appellant's appearance at a deposition.

By the time the parties convened at the October 29 hearing, the original deadlines for Appellant's written responses and disclosures were four and seven months passed, respectively. Appellant had still not served responses sufficient for Appellee to assess, for example, who Appellant communicated with, when they communicated, and the subject of those communications.  Given another chance to comply with her discovery obligations, Appellant ignored the October 31 Discovery Order and November 14 Expense Award Order.  She did not comply, seek relief from the orders, or even provide reasons for her non-compliance.  Appellant opposed Appellee's motion for contempt, but her opposition focused on the merits of the case.  To the extent she addressed her discovery obligations, she merely stated she is not "holding back anything."  (A-244.)  She did not provide evidence of *any* steps taken to abide by the Court's prior orders.  The record below reveals Appellant's "history of repeated failure to engage in discovery and comply with [the Bankruptcy Court's] orders spans several months."  *O'Brien*, 2012 WL 1255276, at *9 (citing *Kuruwa*, 823 F. Supp. 2d at 255 n.2).

In sum, Appellant disobeyed the Bankruptcy Court and obstructed the discovery process in multiple ways and on multiple occasions, and despite the Bankruptcy Court ordering a lesser sanction—the payment of attorneys' fees—Appellant still failed to address *any* of the items raised in the October 31 Discovery Order.  This Court counts at least five times over the course of nine months Appellant was warned by the Bankruptcy Court that noncompliance would lead to severe

sanctions, including dismissal.  This Court is not convinced a sixth time (or more) would have compelled Appellant to comply.  Put differently, this Court believes a plausible explanation supports the default judgment entered by the Bankruptcy Court.

Nonetheless, it is the Bankruptcy Court—not this Court—that should explain on the record why default judgment is justified.  Deploying the same rationale, Judge Briccetti issued an opinion vacating the same Bankruptcy Court's entry of default judgment as to the "Family Defendants" in a related adversary proceeding.  *In re Reifler*, No. 20 CV 1427 (VB), 2021 WL 1226577 (S.D.N.Y. Mar. 31, 2021).  Although this Court is not bound by Judge Briccetti's opinion, it agrees with Judge Briccetti that "[t]he record of the December 17, 2019, hearing on the Contempt Order lacks any factual or legal analysis."  *Id.* at *6.  This Court cannot affirm entry of such a severe sanction where the Bankruptcy Court's ruling is "[b]ereft of findings of fact or legal analysis."  *See, e.g.*, *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (acknowledging the trial court's "frustration with the lackadaisical manner in which this case was litigated" but nonetheless vacating sanctions where trial court did not "provide any analysis"); *In Re Charles DeGennaro, III*, 2020 WL 7231945, at *8 (S.D.N.Y. Dec. 8, 2020) ("The absence of any substantive discussion for why the specific sanctions imposed were appropriate implicates a possible abuse of discretion.").  The December 26 Sanctions Order contains only a conclusory recitation of one of the factors a court ought consider when entering default judgment.  (A-248) (ruling that Appellant "willfully failed to comply" with the October 31 Discovery Order and November 14 Award Expense Order.)  The December 17, 2019 hearing likewise fails to supply "findings of fact or legal analysis" necessary to support the entry of default judgment.

At the hearing, the Bankruptcy Court heard a mere two lines of argument from Appellant's counsel before proceeding to issue a three-line oral ruling.  The relevant portion of the transcript

11

reads as follows:

> MR. O'TOOLE: Your Honor, Andrew O'Toole with O'Toole & O'Toole, for the Chapter 7 Trustee.  Your Honor, with respect to Ms. Vesnic, this is very similar to the other family defendants, but the Court entered an order on October 31.
> THE COURT: It was a pretty clear order, as I read it.
> MR. O'TOOLE: Your Honor. And there was no compliance with this order as well.  And the affirmation that was filed on Friday by Ms. Vesnic's counsel, indicates that she's been backpacking in Mexico, and it's unclear whether he had any contact with her since the Court's order.
> THE COURT: Mr. Siegel?
> MR. SIEGEL: I have not.
> THE COURT: Very good.
> MR. SIEGEL: She's unreachable.
> THE COURT: Okay.  This motion is unopposed and granted.  The answer is stricken, and default judgment will be entered against her in the amount of $129,500.

(A-288.)

The Court then hinted at the possibility Appellant's counsel had engaged in attorney misconduct:

> MR. O'TOOLE: Your Honor, just so the record is clear, though, [Appellant's counsel] did file his affirmation on Friday.
> THE COURT: It's an attorney affirmation, who says he didn't necessarily have contact with the Debtor.  That's not a response.
> MR. O'TOOLE: Thank you, Your Honor.
> THE COURT: That's an attorney making an assumption, which puts you in a Rule 11 problem, but I'm not bring that up.  I just mention it.

(A-288–89.)

A more robust analysis is necessary where, as here, the record does not clearly establish the extent to which the discovery non-compliance was occasioned by the Appellant, Appellant's counsel, or both.  To the extent the non-compliance "was occasioned by the lawyer's disregard of his obligation toward his client," the Court should consider "a less drastic sanction imposed directly on the lawyer." *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996) ("We have long-suggested imposing sanctions directly on dilatory lawyers in appropriate cases, and we continue to commend to our district judges this 'sound practice.'").

This Court thus vacates the December 26 Sanctions Order and remands the case back to

the Bankruptcy Court to provide more detailed findings of fact and legal analysis sufficient to warrant and support the entry of a default judgment.

## CONCLUSION

For the foregoing reasons, the Court VACATES the Bankruptcy Court's Order striking Appellant's answer and entering default judgment against Appellant. The Clerk of Court is respectfully directed to close this case.

Dated:   December 2, 2022                                    SO ORDERED:
         White Plains, New York

_____
            NELSON S. ROMÁN
        United States District Judge